UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                   :       17cv3311(DLC)

BARRINGTON McFARLANE,         :

                                   :    OPINION AND ORDER

                   Plaintiff,   :

                                   :

              -v-              :

                                   :

IRON MOUNTAIN INCORPORATED, RANDY  :
CREGO, and STUART MEYER         :

                                 :

                  Defendants.  :

                                 :
-------------------------------------- X

APPEARANCES:

For Plaintiff:
K. C. Okoli
Law Offices of K. C. Okoli, P.C.
330 Seventh Avenue, 15th Floor
New York, New York 10001

For Defendants:

Kurtis A. Powell
Robert T. Dumbacher
Hunton & Williams, LLP
600 Peachetree Street NE, Suite 4100
Atlanta, Georgia 30308

Joshua S. Pastor
Hunton & Williams, LLP
200 Park Avenue, 52nd Floor
New York, New York 10166

DENISE COTE, District Judge:

    In the above-captioned employment discrimination case,

plaintiff Barrington McFarlane ("McFarlane") brings claims under

the New York City Human Rights Law ("NYCHRL"), 42 U.S.C. § 1981

("Section 1981"), and Title VII of the Civil Rights Act of 1964,

as codified at 42 U.S.C. § 2000 <u>et seq.</u> ("Title VII"), asserting

that he was denied the opportunity for promotions in 2014 and

2015 because of his race and that he was retaliated against in

2016 when he refused to terminate a proceeding before the Equal

Employment Opportunity Commission ("EEOC").  Defendants have

moved for summary judgment on all claims.  For the following

reasons, the defendants' motion is granted with the exception of

a retaliation claim against the individual defendant Randy

Crego.


<u>BACKGROUND</u>

The following facts are not disputed unless otherwise

noted.  McFarlane began working at a company called Safe Site in

1995.  In 1997, Safe Site was acquired by "Iron Mountain."  At

the time of the events pertinent to this action, McFarlane was

employed by the Iron Mountain affiliate known as Iron Mountain

Information Management Services, Inc. ("IMIMS").  IMIMS was

listed as plaintiff's employer on his paystubs and on his tax

documents.  Defendant Iron Mountain Incorporated ("IMI") is the

parent holding company of IMIMS but has no employees.[1]  Defendant

---

[1] In his Rule 56.1 Counter Statement of Undisputed Facts,
plaintiff disputes that IMI is the parent company of IMIMS, that
IMIMS was plaintiff's employer, and that IMI does not have any
employees.  The plaintiff has not, however, submitted any
evidence to raise a question of fact regarding these issues.  As
described below, the defendants have taken the position since

Stuart Meyer is a former employee of Iron Mountain Information, LLC, having worked in its human resources division.  Defendant Randy Crego works for an Iron Mountain affiliate as a District Manager.  Defendants assert that Crego works for Iron Mountain Information, LLC, but have not submitted any evidence to support that assertion.  He works in Orangeburg, which is in Rockland County, New York.

Iron Mountain provides document services, including document shredding, data management, and records management. McFarlane worked in the records management department of IMIMS, which supports the storage of customers' paper documents.  Over the years, McFarlane worked at multiple Iron Mountain affiliate locations in the state of New York, including Orangeburg (Rockland County), Port Washington (Nassau County), and Hicksville (Nassau County).  He never worked at a location in New York City.

In 2001, McFarlane was promoted by Randy Crego to a Records Center Supervisor position at IMIMS's facility in Orangeburg. In 2007, that position was eliminated throughout the company, and McFarlane became a Records Center Coordinator.

---

the beginning of this litigation that IMI is IMIMS's parent company and that IMIMS was plaintiff's employer.

3

By 2014, McFarlane was working as a Records Center Coordinator in Hicksville.  After a 2014 restructuring, Maiorella became McFarlane's sole direct supervisor.

Later in 2014, while McFarlane was still in Hicksville, an opening for the Operations Supervisor in data management in Port Washington was posted on Iron Mountain's internal and external webpages.  The data management unit is distinct from the records management unit where plaintiff worked.  Plaintiff did not apply for this position, despite knowing of the opportunity.  After several months, and despite the fact that multiple applications had been made to fill the position, the position remained vacant.  William Carson Keers-Flood, an individual not previously employed by any Iron Mountain entity, learned of the position.  Keers-Flood met with Crego to learn more about the company.  After this informational interview, and before Keers-Flood applied for any position, Crego referred him to an Operations Manager, Christopher Swanger, for further assessment and discussions.  In May 2015, after an application and interview, Swanger hired Keers-Flood for a position as Operations Supervisor for records management, stationed in Port Washington, and not for the open position of Operations Supervisor in data management in Port Washington.

At this point, Mairoella, who had been McFarlane's supervisor in records management became a data management

4

supervisor and Keers-Flood became McFarlane's supervisor; the
Hicksville facility where McFarlane worked was in Keers-Flood's
territory.  McFarlane was unhappy that Keers-Flood was his new
supervisor and that Keers-Flood would be completing his
performance reviews.  McFarlane testified that it was not "fair"
that someone who had known him for less than a few months would
review his performance.  Keers-Flood gave McFarlane a generally
positive 2015 annual performance review.

On November 18, 2015, McFarlane filed a charge of
discrimination with the EEOC against "Iron Mountain," alleging
race discrimination in the hiring of Keers-Flood.  Plaintiff had
not raised any internal complaints about the allegations made in
the EEOC charge.  Meyer, working in the human resources
department, met with McFarlane on November 23 to discuss the
EEOC charge.  After the meeting, Meyer followed up with
McFarlane, requesting additional information regarding his
allegations.

McFarlane and Meyer met again on January 4, 2016.  It is
disputed whether Meyer and McFarlane discussed McFarlane's
willingness to consider a "separation package" on January 4.
McFarlane contends that he expressed a willingness to "work
something out."

McFarlane, Meyer, and Crego met on January 22 in
Orangeburg, at which time McFarlane was presented with a

"separation package."  The package included the condition that McFarlane drop his EEOC charge.  McFarlane did not accept the package.  It is disputed whether Meyer told McFarlane at the time that he was being placed on paid leave, but it undisputed that McFarlane was not allowed to return to work that day. Immediately following the meeting, McFarlane was escorted from the building by Crego.  His keys and ID badge were collected. McFarlane said goodbye to multiple colleagues as he was escorted off the premises.

On January 26, Meyer contacted McFarlane to ask if he had further considered the "separation package."  During that conversation, she told him that his employment had not been terminated.  McFarlane said he had not considered the "separation package" further and that he was leaving the country to attend a funeral.  They agreed to speak a week later, after McFarlane's return.

McFarlane and Meyer spoke again on February 3.  McFarlane was asked to return to work on February 8 and informed that he could return to his same position.  McFarlane noted that he had received a notice that his employee stock purchase plan was being terminated.  Meyer told him this was an error.

On February 4, Meyer emailed those in charge of employee benefits to ensure McFarlane's stock purchase plan was not

terminated.  McFarlane testified that he never received written notice that the earlier notice had been in error.

When McFarlane did not return to work on February 8, Meyer called McFarlane.  McFarlane indicated he would not be returning to work and gave Meyer his counsel's contact information.  On February 11, Meyer wrote to McFarlane, stating that if he did not return to work by February 15, his absence would be considered a voluntary resignation from his position.  On February 12, McFarlane's counsel responded.  McFarlane was given an additional week to return to work.  McFarlane never returned to work.

On February 25, 2015, McFarlane filed a second charge with the EEOC against "Iron Mountain," alleging retaliatory discharge.  McFarlane received pay and benefits until around March 15, 2015, when defendants claim his employment with IMIMS was terminated pursuant to its voluntary termination-job abandonment policy.  McFarlane does not dispute that he continued to receive benefits until March 15, but claims that these were benefits that he had accrued and to which he was entitled even after the termination of his employment.

McFarlane asserts claims under Section 1981 and the NYCHRL for Maiorella's 2014 designation as his sole supervisor in the record management unit after the corporate reorganization; claims under Title VII, Section 1981 and the NYCHRL for the

7

allegedly discriminatory hiring of Keers-Flood in 2015 to
replace Maiorella; and claims under Title VII, Section 1981, and
the NYCHRL for his discharge in retaliation for having filed an
EEOC charge in 2016.


PROCEDURAL HISTORY

Plaintiff filed this action in Bronx County Supreme Court
on February 10, 2017.  Defendants removed the action to this
Court on May 4.  On June 22, plaintiff's motion to remand was
denied.

On August 18, 2017, an initial conference was held with the
parties.  At the conference, as they had done in in their
answer, defendants noted that plaintiff was an employee of IMIMS
and not an employee of the named defendant corporation, IMI.  In
accordance with a pretrial scheduling order, plaintiff filed an
Amended Complaint on August 24, 2017, but again failed to name
IMIMS as a defendant.  Because the plaintiff did not attempt to
show cause why the Amended Complaint did not name the correct
defendant, his November 30 motion to file an untimely second
amended complaint was denied.

At the August 18 conference, defendants also noted that the
plaintiff had failed to serve Meyer, who is no longer an
employee of Iron Mountain Information, LLC.  The pretrial
scheduling order ordered the plaintiff to serve Meyer by

September 8.  The plaintiff has not filed an affidavit of
service or other proof of service indicating that Meyer was
served in this action.[2]

Plaintiff then filed a separate case in New York state
court on or about December 6, 2017.  That case named IMIMS as
well as Crego and Meyer as defendants.  Defendants removed the
case on December 12.  After accepting the case as related, the
Court dismissed it as duplicative.  McFarlane v. Iron Mountain
Information Management Services, Inc., 17cv9739 (DLC), 2018 WL
9411748 (S.D.N.Y. Feb. 16, 2018).

Following the close of discovery, defendants filed the
instant motion for summary judgement on April 13, 2018.  The
motion became fully submitted on June 1.[3]


## DISCUSSION

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine

---

[2] There is also no proof of service of Crego filed on the docket.
In pleadings in a related case described below, McFarlane noted
that he had served Crego in this action.  The defendants do not
argue that Crego has not been served in this action.

[3] Plaintiff timely filed his response and supporting papers to
defendants' motion on May 11.  One document, counsel's
declaration with its attached exhibits, was filed May 12.  In a
May 14 letter motion, plaintiff requested that the May 12 filing
be considered timely filed.  Plaintiff's motion is granted.  The
May 12 filings have been considered in connection with this
motion.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted) (emphasis omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)

(citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In cases involving claims of employment discrimination, "an extra measure of caution is merited" in granting summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."  Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).  Ultimately, the test for summary judgment is whether "a reasonable jury could return a verdict for the nonmoving party."

Nunn v. Massachusettts Cas. Ins. Co._, 758 F.3d 109, 114 n. 4 (2d Cir. 2014) (citation omitted).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

> Title VII also includes an anti-retaliation provision which makes it unlawful for an employer to discriminate against any employee or applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding.

Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of Title VII's basic guarantees." Id. (citation omitted).

Section 1981 prohibits discrimination on the basis of race, ancestry, or ethnicity. See Runyon v. McCrary, 427 U.S. 160, 168 (1976). It provides, "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Section 1981 encompasses retaliation

claims.  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457
(2008).

The NYCHRL makes it unlawful for an employer to
discriminate against any person based on their race, among other
characteristics. N.Y.C. Admin. Code § 8-107(1)(a).  To state a
claim under the NYCHRL, a plaintiff must allege that the
defendant discriminated against him "within the boundaries of
New York City".  Shah v. Wilco Sys., Inc., 806 N.Y.S.2d 553, 558
(1st Dep't 2005).  See also Hoffman v. Parade Publs., 15 N.Y.3d
285, 291 (2010) (confining "the protections of the NYCHRL to
those who are meant to be protected -- those who work in the
city").

Courts in this Circuit analyze Title VII and Section 1981
claims of employment discrimination based on race according to
the three-stage, burden-shifting framework set forth in
McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802
(1973).  See Littlejohn v. City of New York, 795 F.3d 297, 312
(2d Cir. 2015).

Under the McDonnell framework, a plaintiff bears the
initial burden of establishing a prima facie case of
discrimination through direct or circumstantial evidence.
Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2011).

> To establish a prima facie case of a discriminatory failure
> to promote, a Title VII plaintiff must ordinarily
> demonstrate that: (1) [he] is a member of a protected

       class; (2) [he] applied and was qualified for a job for
       which the employer was seeking applicants; (3) [he] was
       rejected for the position; and (4) the position remained
       open and the employer continued to seek applicants having
       the plaintiff's qualifications.

Aulicino v. New York City Dept. of Homeless Services, 580 F.3d

73, 80 (2d Cir. 2009) (citation omitted) (finding a prima facie

case of discrimination when plaintiff, in meeting the fourth

factor, showed that the promotion was given to another

individual).  As the Supreme Court noted in McDonnell, "[t]he

facts necessarily will vary in Title VII cases, and the

specification above of the prima facie proof required from

respondent is not necessarily applicable in every respect to

differing factual situations."  McDonnell, 411 U.S. at 802 n.13.

A plaintiff's burden at the prima facie stage to offer evidence

of circumstances "giving rise to an inference of discrimination"

is "minimal and de minimis."  Zimmermann v. Assocs. First

Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (citation

omitted).

       A plaintiff who makes out a prima facie case establishes a

presumption of discrimination, at which point the burden of

production shifts to the defendant.  Woodman v. WWOR-TV, Inc.,

411 F.3d 69, 76 (2d Cir. 2005).  To meet its burden, the

defendant must articulate a "legitimate, nondiscriminatory

reason" for the challenged conduct.  Texas Dept. of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1981).  If the defendant

produces such a reason, the presumption drops out and the burden
of proof shifts back to the plaintiff.  Woodman, 411 F.3d at 76
(citation omitted).  To prevail on his claim, a plaintiff must
then show, without the benefit of the presumption, that the
employer's action was in fact the result of intentional
discrimination.  Holcomb, 521 F.3d at 138.  "In short, the
ultimate burden rests with the plaintiff to offer evidence
sufficient to support a reasonable inference that . . . the
defendant intentionally discriminated against the plaintiff."
Woodman, 411 F.3d at 76 (citation omitted).

　　　　With respect to retaliation claims, a plaintiff must
establish a prima facie case of retaliation by showing "(1)
participation in a protected activity; (2) the defendant's
knowledge of the protected activity; (3) an adverse employment
action; and (4) a causal connection between the protected
activity and the adverse employment action."  Zann Kwan v.
Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013) (citation
omitted).  The Supreme Court has found that, in order to
establish the element of an adverse employment action for
purposes of a retaliation claim, "a plaintiff must show that a
reasonable employee would have found the challenged action
materially adverse, which . . . means it well might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White,

548 U.S. 53, 68 (2006) (citation omitted).  Placing an employee

on "suspension with pay may sometimes rise to the level of an

adverse employment action."  Brown v. City of Syracuse, 673 F.3d

141, 151 (2d Cir. 2012).  The key question is whether the

administrative leave "changed the terms and conditions of

employment" or was coupled with other actions -- something more

-- that, together with administrative leave, did so.  Id. at

150-51 (citation omitted).  "Because there are no bright-line

rules, courts must pore over each case to determine whether the

challenged employment action reaches the level of 'adverse.'"

Wanamaker v. Columbia Rope Co., 108 F.3d 462, 466 (2d Cir.

1997).

     "Once the plaintiff has established a prima facie showing

of retaliation, the burden shifts to the employer to articulate

some legitimate, non-retaliatory reason for the employment

action."  Zann Kwan, 737 F.3d at 845.  If the defendant

"articulate[s] a non-retaliatory reason for the employment

action, the presumption of retaliation arising from the

establishment of the prima facie case drops from the picture."

Id.  The plaintiff then has the burden to prove that the

retaliation was a "'but-for' cause of the adverse action, and

not simply a 'substantial' or 'motivating' factor in the

employer's decision."  Id.  The plaintiff must prove "that the

unlawful retaliation would not have occurred in the absence of

the alleged wrongful action or actions of the employer." Id.
(citation omitted).

Courts in this Circuit have adopted two exceptions to the
rule that employment discrimination claims may be maintained
only against a plaintiff's direct employer.  First, under the
"single employer" doctrine, liability may be found "where two
nominally separate entities are actually part of a single
integrated enterprise." Arculeo v. On-Site Sales & Marketing,
LLC, 425 F.3d 193, 198 (2d Cir. 2005) (citation omitted).
Examples of a "single employer" enterprise include "parent and
wholly-owned subsidiary corporations [and] separate corporations
under common ownership and management." Id.  Four factors are
considered in order to assess whether two nominally distinct
entities are actually a single employer: "(1) interrelation of
operations, (2) centralized control of labor relations, (3)
common management, and (4) common ownership or financial
control." Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235,
1240-41 (2d Cir. 1995) (citation omitted).  "Although no one
factor is determinative[,] control of labor relations is the
central concern." Brown v. Daikin Am. Inc., 756 F.3d 219, 227
(2d Cir. 2014) (citation omitted).  Centralized control of labor
relations includes "tasks such as handling job applications,
approving personnel status reports, and exercising veto power

over major employment decisions." Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000).

Second, under the "joint employer" doctrine, liability may be found when "separate legal entities . . . handle certain aspects of their employer-employee relationship jointly." Arculeo, 425 F.3d at 198 (citation omitted). The Second Circuit has "not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII . . . . The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." Id. at 199 n.7. The Second Circuit has directed district courts to apply an "economic realit[ies]" test based on "the circumstances of the whole activity" to determine whether independent entities function as a joint employer. Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 71 (2d Cir. 2003) (citation omitted). But it has also noted that a "court is also free to consider any other factors it deems relevant to its assessment of the economic realities." Id. at 71-72.

There is no individual liability under Title VII. Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000). "[A]n individual defendant cannot be held personally liable under Title VII." Schiano, 445 F.3d at 608 n.8. "[I]ndividals may be held liable under Section 1981." Whidbee v. Garzarelli Food Specialties, Inc. 223 F.3d 62, 75 (2d Cir. 2000). "[I]in order to make out a

18

claim for individual liability under Section 1981, a plaintiff
must demonstrate some affirmative link to causally connect the
actor with the discriminatory action." Id. (citation omitted).
To be held liable under Section 1981, a defendant must be
"personally involved in the alleged deprivation". Littlejohn,
795 F.3d at 314 (citation omitted).

I. McFarlane's NYCHRL Claims

     Defendants are entitled to summary judgment on McFarlane's
NYCHRL claims.  McFarlane's claims do not meet the threshold
requirement for NYCHRL claims that the alleged discriminatory
conduct occur in New York City.  While McFarlane is a New York
City resident (he lives in the Bronx), it is undisputed that
McFarlane never worked at an Iron Mountain facility within the
boundaries of New York City.  None of the meetings with Meyer
occurred in New York City.  In opposition to the defendants'
motion, McFarlane does not dispute the inapplicability of the
NYCHRL to his claims.

II. Claims Asserted Against IMI

     Defendants are entitled to summary judgment on all claims
asserted against IMI.  As a threshold issue, defendants argue
that IMI is an improperly named defendant because IMI was not
McFarlane's employer.  This is not news to the plaintiff.  In

their May 2017 answer and again at the August 18, 2017 initial
conference, defendants advised the plaintiff that he was
employed by IMIMS, not IMI.  It is undisputed that McFarlane was
paid by IMIMS.

A pretrial scheduling order allowed McFarlane to add
parties or otherwise amend his pleadings by September 8, 2017.
On August 24, McFarlane filed an Amended Complaint to add new
legal claims, but did not name IMIMS as a defendant.  In their
September 5 answer, defendants again noted that "Iron Mountain
Incorporated was not the employer of Plaintiff and therefore is
improperly named as a defendant in this action.  Plaintiff's
employer was Iron Mountain Information Management Services,
Inc."

On November 30, plaintiff sought leave to file an untimely
second complaint to "reflect the true name of the defendant."
The Court noted that "the time to amend without a showing of
good cause expired on September 8, 2017.  This letter does not
explain why the corporate defendant's name was not corrected in
an amended pleading on or before September 8, 2017."
Thereafter, plaintiff made no application to show cause why the
Amended Complaint did not name the correct corporate defendant.

Plaintiff then filed a separate case in New York state
court which named IMIMS as a defendant.  That case was removed
to this Court and accepted as related.  In his opposition to

defendants' motion to dismiss the case as duplicative, McFarlane conceded that "Iron Mountain Incorporated is, however, not Plaintiff's employer but a related entity to Plaintiff's employer, Iron Mountain Information Management Services."  He admitted that the "second action . . . served . . . [to] ensure[] that the proper party, Iron Mountain Information Services, Inc., was brought to court." (Emphasis in original.) He also noted that "it is only a matter of time before Iron Mountain Incorporated" is dismissed from this action because it is not the proper defendant.

Despite these admissions that his claims against IMI must be dismissed, McFarlane now argues that "there are fact issues as to whether IMI and IMIMS operate as part of a single integrated enterprise to make them" jointly his employer. McFarlane does not offer admissible evidence to support that contention, or to support the potential, related argument that IMI and IMIMS operated as a single employer.  See Arculeo, 425 F.3d 193, 198-99.

It is undisputed that IMI is IMIMS's parent corporation. That, on its own, however, is insufficient to prove that IMI and IMIMS operate as a single employer.  McFarlane has introduced no evidence with respect to the critical single-employer factor, control of labor relations.  He does not, and cannot, allege the he was hired, fired, or managed by an employee of IMI, because

IMI has no employees.  There is no evidence that IMI even held any records pertaining to McFarlane.

From the very beginning of this action, IMI has asserted that it was not properly joined as a party.  McFarlane's pleadings in this and the related litigation demonstrate that his new argument that IMI and IMIMS were his "joint" employers is disingenuous.  McFarlane has presented no sufficient basis in law or fact to treat IMIMS employees as employees of the parent company, IMI.  IMI is entitled to summary judgment on all claims.


III. Claims Asserted Against Randy Crego

McFarlane asserts two failure to promote claims and one retaliation claim against Crego pursuant to Title VII and Section 1981.  The Title VII claim is dismissed.  Title VII does not permit individual liability.  Crego is also entitled to summary judgment on the Section 1981 discrimination claims, but not the retaliation claim.

Crego is entitled to summary judgment on McFarlane's Section 1981 claim arising from the 2014 failure to promote McFarlane to a supervisory position in the records management department during a company-wide restructuring.  McFarlane alleges that he was discriminated against when Maiorella became his sole supervisor in the records management department.  In

order to make out a claim under Section 1981, McFarlane must demonstrate some affirmative link to causally connect Crego with the alleged discriminatory action.  He has not done so. McFarlane has not alleged <u>any</u> facts that link Crego to the company restructuring that led to the appointment of Maiorella as his sole supervisor.  In his opposition to the instant motion, McFarlane has abandoned any argument regarding the 2014 failure to promote.  Crego is entitled to summary judgment on this cause of action.

Crego is also entitled to summary judgment on McFarlane's Section 1981 claim arising from the 2014 failure to promote McFarlane to the position of Records Management Operations Supervisor.  McFarlane alleges that Crego discriminated against him by hiring Keers-Flood for that position.  McFarlane has not offered sufficient evidence, however, to permit a jury to find that Crego had a role in that appointment.

The undisputed facts are these.  Keers-Flood applied for an Operations Supervisor position in the data management unit, a separate unit from the records management unit in which McFarlane worked.  The data management position had been advertised and McFarlane had not applied for it.  Crego initially screened Keers-Flood during an informational interview, then referred him to Swanger, his inferior, for further assessment for the data management position.  There is

23

no evidence to suggest that, after Crego referred Keers-Flood to
Swanger, Crego had any further involvement with the process of
hiring Keers-Flood.  After the referral to Swanger, Swanger
decided to move Maiorella to data management and to hire Keers-
Flood to replace Maiorella in the records management position.
There is nothing to suggest that Crego, when he first
communicated with Keers-Flood or with Swanger about Keers-Flood,
knew or recommended that Keers-Flood be hired for the records
management department, rather than for the advertised position
in data management.

McFarlane argues in opposition to the motion that Crego was
intimately involved in hiring Keers-Flood for the records
management position.  The evidence belies this assertion.
Keers-Flood testified that he had an informational interview
with Crego before he expressed any formal interest in any
position with any Iron Mountain affiliate.  After that
informational interview, Crego referred Keers-Flood to Swanger.
Keers-Flood did not testify to having any communication during
the hiring process with Crego after their initial meeting.
Keers-Flood had a formal interview with Swanger.  Keers-Flood
completed his application process with Swanger.  Swanger, not
Crego, called Keers-Flood to offer him a job.  McFarlane has not
identified evidence from which a jury could find that Crego had

a role in appointing Keers-Flood to the Operations Supervisor position in records management.

Finally, the defendants have moved to dismiss the claim that Crego violated Section 1981 when he participated in the termination of McFarlane's employment on January 22, 2016 in retaliation for McFarlane filing an EEOC charge against "Iron Mountain."  On January 22, McFarlane refused to drop his EEOC charge in a meeting with Crego and Meyer, and Crego escorted McFarlane from the building after taking McFarlane's keys and ID badge.  The motion for summary judgment is denied.

The plaintiff has offered sufficient evidence that McFarlane was fired on January 22 as an act of retaliation and that Crego had a role in that decision.  Defendants argue that McFarlane was not fired on January 22.  They assert that McFarlane was merely suspended on January 22, that McFarlane refused to return to work despite invitations to do so, and that McFarlane voluntarily left his job in February 2016.  These events raise issues of fact that a jury must resolve.


III. Claims Asserted Against Stuart Meyer

Meyer is entitled to summary judgment on all claims.  It is undisputed that McFarlane failed to serve Meyer.  McFarlane never offered, or attempted to offer, good cause for failure to serve Meyer.  In his opposition to this motion, McFarlane

abandons any argument asserting claims against Meyer.  All claims against Meyer must be dismissed.

CONCLUSION

Defendants' April 13 motion for summary judgment is granted in part.  Iron Mountain Incorporated and Stuart Meyer are granted summary judgment.  Randy Crego is also granted summary judgment on all claims brought under Title VII and the NYCHRA, and on the failure to promote claims brought under Section 1981.  McFarlane may proceed with his claim for unlawful retaliation under Section 1981 against Crego.


Dated:    New York, New York
          August 8, 2018


_____
               DENISE COTE
        United States District Judge